Our second case for argument this morning is Morrison v. Saul. Mr. Forbes. Morning, Your Honor. Morning. My name is Randall Forbes. I represent the disability claimant in this action. I'd like to start with the administrative law judge's findings, unless Judge Easterbrook wants me to go through the standard of review first. Are we good on that? You can allocate your time as you want. All right. Thank you. Although I do have a procedural question for you. Sure. Do you have any response to the district court's reasoning in this case? My clerks and I checked. Right. Your brief in this court appears to be a verbatim copy of your filings in the district court. Generally… And we inspect lawyers when they appeal from the district court to the court of appeals to address the grounds on which they've lost. Right. And your brief doesn't even mention the grounds on which you lost. I don't always do that. Mainly, if I don't do it, it's because I don't feel that the de novo review compels it. So you think the U.S. district court is just some thing to be ignored? Not necessarily. But that's what you've done. This case was litigated in a U.S. district court, and you decided simply to ignore it. You know, one can put this a different way. Right. The submission you made to the district court has already been evaluated by a judicial officer and found to be inadequate. Why would you just repeat it rather than try to do something better? I guess, Your Honor, the number of these that I do, which is a substantial amount, may be one of the highest in the country. I do the best I can, and I try to present you with the arguments that I think are most compelling. But the next time, perhaps I will do better. The first point is that at step two, the administrative law judge identifies as severe impairments major depressive disorder and anxiety. If the government is correct in this case, or if the district court is correct, and the ALJ did not believe there were any limitations in concentration, persistence, and pace, then those two impairments should not have been included in step two and identified as severe impairments. It's quite simple, in a way, to arrange an opinion so that the residual functional capacity is ordered in a manner that is consistent. And in this case, it's not. If you look at the residual functional capacity, I do not see any limitations related to concentration, persistence, or pace. What limitations are you suggesting should have been included in the hypothetical based on the record? Based on the record and on the ALJ's reasoning in describing the limitations as moderate, it would be that this claimant cannot concentrate in an unskilled setting for the two-hour time increment between regimented breaks. What in the record supports that limitation? I believe the claimant's testimony, the fact that he sought mental health treatment, the fact that he was provided mental health treatment. And I got to, you know, the ALJ makes the decisions. And the ALJ should be stuck with his reasoning. If I were the ALJ, I might have come up with different findings, but I'm not. The ALJ is stuck with identifying them as severe impairments. He graded them as moderate. And then this residual functional capacity does not have a limitation in there at all. If that's the way the ALJ thought, there should be no severe impairments in the mental health range. And he should not have graded it as moderate or mild. And yet the ALJ did, and this is where we are. And this is a cognitive limitation, the closest he gets. And it looks like he's talking about simple instructions, but he's not. Because simple instructions are lesser included in detailed instructions. So what this ALJ is saying is that this claimant can do a job with one to five step detailed instructions, which does not sound like it's skilled. And, excuse me, does not sound like it's unskilled. This is a limitation that says he can do skilled work. Or it's a neological limitation that says instructions can be both detailed and simple at the same time. So that's all I'm going to spend on that issue right now. I will reserve the rest of my time. Thank you. Mr. Deadwild. Good morning, Your Honors. My name is Gabriel Deadwild, and I represent the Commissioner of Social Security. I would ask the court to affirm the decision for the same reasons as the district court. But to the extent that this is a de novo determination, let me address the arguments that Morrison has presented. To the extent that the argument is that there is no limitation in the residual functional capacity that addresses the moderate limitations in maintaining, in concentrating, persisting, and maintaining pace, I think a little background may be in order to what exactly it means to have a moderate limitation for an ALJ to find that a claimant has a moderate limitation. Since some of the decisions of this court that Morrison has relied upon, the regulations have been revised, and this terminology has been defined. And what these ratings look at are to evaluate severity at Step 2 of the sequential evaluation process and to find if the claimant is per se disabled at Step 3. They look at the ability to function independently, appropriately, effectively, and on a sustained basis. So the fact that the ALJ found a moderate limitation means that it's something between slightly limited, and if it was only slightly limited, the ALJ would have found a mild limitation, and a marked limitation, which would be seriously limited. So it's something in between, and the mere fact that the finding is moderate does not direct a specific outcome in the residual functional capacity. That is a question of substantial evidence in the record before the ALJ. So in this case, when the ALJ identified moderate limitations in concentration, persistence, and pace, in the decision what the ALJ discusses is Morrison's allegations of difficulties with attention and concentration in completing tasks. She discusses the consultative exam in which he showed some difficulties with attention and with memory, but also the examiner's opinion that even with those limitations, he would be able to learn new vocational skills and be able to do at least simple work. And that was what led this ALJ to find moderate limitations. Was that Dr. Hershberger you're referring to? Yes, Your Honor. Even more importantly, and what distinguishes this case from many others before this court, is that this ALJ relied on a medical expert who testified at the hearing, who reviewed the evidence, and specifically also testified that the evidence supported moderate limitations in this area, but also translated that into the residual functional capacity, finding that this claimant, despite the moderate limitations, is able to do not only just simple instructions but also detailed but only limited up to five steps. Is there any dispute that the vocational expert was present during that testimony? No, Your Honor. And I was just about to address that point because this distinguishes it from other cases. Because the vocational expert was present not only for the review of the evidence through the medical expert but also through this opinion testimony. So there is no dispute that the vocational expert was apprised of the basis for the ALJ's limitations in the residual functional capacity assessment as presented in the hypothetical question. Now, as for the finding itself and whether it's contradictory or not supported, again, it's supported by a medical expert's testimony. It's addressing both simple and detailed. It is a limitation. It's limiting him to only five steps, not the full range of detailed instructions. And based on the medical expert's testimony and the ALJ's explanation in the decision addressing the medical evidence, it is fully supported by the evidence. The second issue that Morrison has raised in his brief has to do with the ALJ's evaluation of the symptoms. As described in our brief, we believe this is also supported by substantial evidence. The ALJ considered appropriate factors. No single one was dispositive, but taken together, they formed a reasonable basis for the ALJ to find that Morrison's allegations and statements regarding his symptoms were not supported by the evidence. What supports the fact that the ALJ considered his pain complaints? What evidence is there in the record? In the decision itself, the ALJ discussed both the factors that go to that are the activities of daily living and the failure to pursue specialist treatment. And specifically in this case with regard to pain. But those are separate issues. But they also... The pain itself. It wasn't clear to me that she specifically considered that. And Dr. Rosenfield testified that she did not take that into consideration. Yes, Your Honor. The psychological expert testified to the medical evidence. It was up to the ALJ to consider the symptoms and the pain. And the ALJ... I don't know that I can point to a specific place in the decision where she specifically said, I consider pain in this regard. But, for example, the reason I bring up, for example, failure to seek treatment, in reading the decision as a whole and the evidence as a whole, Morrison was receiving pain medication from a primary care provider. There's no contemporary in his reports that this is not controlling his pain. He was referred to a pain management provider, did not follow up on that. So that line of reasoning addresses reasons to believe that the pain was not as severe as he alleged. Similarly with the activities of daily living, he's presenting to the ALJ that he's unable to walk more than two blocks, can't stand for more than 10, 15 minutes. Whereas the activities of daily living he does don't necessarily prove an ability to work, but what the ALJ is considering is they don't really line up with those allegations that he made at the hearing. So my reading of the decision is that the decision as a whole addresses pain as one of the symptoms that the ALJ is considering, along with the other psychiatric symptoms. If there's no other questions, Your Honor, that's all I have. Thank you. Thank you, counsel. Anything further, Mr. Forbes? Yes, Your Honor. Vocational expert is not the finder of fact. I know that O'Connor Spinner suggests that if the vocational expert reviews the entire record as present during the testimony that certain imputations should be made. But the vocational expert can only take what the judge asks him or her in the hypothetical and then answer the question. There's a lot of evidence in this case both ways, and an ALJ could put together an opinion that could withstand substantial evidence review. But we are left with the decision the ALJ made, and in order for it to meet the substantial evidence standard, the reasoning has to be logically connected to the findings. And that's the essence of the argument in this case. That was the essence of the argument in Yurt and in Crump. If the case law in Yurt and Crump is allowed to continue to crumble, with the line of cases that at least most recently started with Josephick, then disability attorneys will not know which cases should be appealed at or which cases should not. Because, in essence, it's all going to be about looking at the evidence and reshaping it. At least that's my perspective. This is not just any plaintiff. This is a plaintiff whose work history resembled a pro football player that stayed in the game a little too long. This guy worked really hard at hard jobs for a long time. And so to say that his complaints of pain should not be believed is kind of fantastical in and of itself. He had surgeries. He worked hard. And that ought to count for something. And that's why we have the doctrine that has to do with work history. And I'm well aware of the limitations of the doctrine. But when we're evaluating cases, it ought to at least count for something. Finally, I'm not sure the new regulations are applicable in this case. This case was filed long before the new regulations went into effect. What's that? Thank you, Counsel. You're welcome. Thank you, Your Honors. The case is taken under advisement.